NEW-YORK,
May, 1830.

Gibson
v.
Williams.

GIBSON *vs.* WILLIAMS.

In *slander*, where the plaintiff in his declaration after setting forth the words spoken, *avers* that the defendant by means of the words, insinuated, and meant to be understood as charging the *plaintiff* with the crime imputed, and that the defendant was so understood by the hearers; whether or not such was the intention of the defendant, is a question of fact to be determined by the jury upon the evidence adduced in support of the averment·

A defendant who couches his slander in ambiguous terms, in the hope of blasting the reputation of his neighbour without incurring legal responsibility, is not entitled to an indulgent construction of his words either from the court or the jury.

The understanding and opinions of witnesses are not received in evidence, except in matters of science and a few special cases resting upon peculiar circumstances. It is the business of witnesses to state facts, and it is the province of the jury, under the direction of the court, to draw the necessary inferences or conclusions,

THIS was an action of *slander*, tried at the Oneida circuit in October, 1828, before the Hon. NATHAN WILLIAMS, one of he circuit judges.

The declaration contained two counts. The words charged in the *first* count to have been spoken by the defendant, were as follows: "There is a thief in the neighbourhood; I have lost hams, dried beef, cheese and flour, and the man who stole them was caught in my cheese room by my wife, and she could name the man if put under oath. I will not call names· for fear of being sued for slander, but the thief lives between here and my house." These words were laid with proper *inuendoes*, and then the plaintiff *averred* that at the time of the speaking, &c. the defendant was at.the house of one Putnam Bigelow; that the house of the plaintiff, where he then resided, was situated between the house of Bigelow and the house of the defendant, and that there was no house other than that of the plaintiff, and that no man other than the plaintiff resided between the house of Bigelow and the house of the defendant. He further averred that the defendant by the speaking of these words insinuated and meant to be understood as charging the plaintiff with being a thief and with having stolen his hams, &c., and

that the words were so understood by the citizens in whose hearing they were spoken. The words as laid in the *second* count were, "he (meaning the plaintiff,) is a thief and has stolen hams, dried beef, cheese and flour out of my buttery." The defendant pleaded the general issue.

The plaintiff proved that in the year preceeding the trial, the defendant repeatedly said that there was a thief in the neighborhood, that hams, dried beef, butter, cheese, and flour had been stolen from his house, that the theft had taken place on the 2d, 3d or 4th of April, and that on the 16th of April, his wife had discovered a man stealing his way out of the house; on being asked whether she could tell who the man was, he said she could tell under oath who she thought he was. He told one witness that he had sent word to the plaintiff, by the plaintiff's son, that if he did not stop driving his cattle that way, he would put him in mind of the 3d and 16th of April; and the son of the plaintiff testified that the defendant had sent such message by him, that he asked the plaintiff to explain what he meant by the 3d and 16th of April, but he did not do it. Putnam Bigelow testified that the defendant told him that there was a thief in the neighborhood, and that he *lived east of him, the defendant, within two miles;* that he had lost hams, butter, cheese and flour out of his house, that his wife caught the man in the back room in the night. This witness as well as others testified that he had frequently heard the defendant sing some doggerels upon the same subject, the concluding line of which was, 'he will sue me for slander or his name I could tell.' This witness was asked by the plaintiff's counsel whether he understood who the defendant meant to charge with being a thief. The question was objected to and overruled. The testimony of another witness, one Andrew Foley, was similar to that of Bigelow: he said he understood who the defendant meant; but on the objection of the defendant's counsel, the judge would not permit him to state the name of the person whom he understood to be charged. A Mrs. Foley testified to an accidental meeting between the parties, at which the defendant evinced some embarrassment, and on

NEW-YORK, being subsequently interrogated as to the cause of it, he said
May, 1830. that he always dreaded the beginning of war; that he had
~~~~~~~~~~ known the plaintiff as well 16 years ago as now; not quite
Gibson so well, for every new trick counted one. It was proved
v. that the plaintiff lived east of the defendant, and between the
Williams. houses of the defendant and Putnam Bigelow, but that there
were also a number of other persons residing within two miles
east of the defendant.

The plaintiff having rested, on a motion for a nonsuit, the
judge expressed his opinion that the evidence was too loose
and uncertain to sustain either count in the declaration. The
plaintiff excepted to the opinion, but submitted to a nonsuit
with leave to apply to set it aside. Application was accord-
ingly made by the plaintiff.

*J. A. Spencer*, for the plaintiff. The judge erred in not
permitting the witnesses Bigelow and Foley to testify whom
they understood was charged by the defendant with being
the thief he alluded to. If they were authorised from what
was said, to believe that it was the intention of the defendant
to charge the plaintiff as the offender, their testimony ought
to have been received. (2 Wendell, 534.) After stating
the words and circumstances, the witnesses may be asked to
whom they understood the defendant meant to apply the
charge. (2 Starkie's Ev. 846, 861.) This must be so; for
it is in the understanding of the witnesses that the charge
applies to a particular person, that the injury consists.

The evidence given ought to have been submitted to the
jury, it being sufficient to entitle the plaintiff to recover. The
slanderous words as laid in the declaration were proved;
the only variance was as to the location of the person in-
tended to be charged, which was not material. (1 Phil. Ev.
162. 1 Maule & Sel. 287.)

*W. C. Noyes*, for defendant. Whatever the rule may be
in England, it is not competent here for a witness to state,
to *whom* he understood the words to apply. Starkie, it is
admitted, lays down the rule differently, but he is unsupported
by the authority of any decided case. A witness can tes-

tify only to facts or declarations; his understanding of the intention of a party is not evidence; it is a matter resting entirely in his own mind, and which cannot be disproved, and there would be no possibility of convicting him of per- jury on the ground of such evidence. (1 *Wendell*, 191.)

A witness is not allowed to testify to the import of words, for if so, a party might be rendered accountable for the mis-understanding of the witness ; the court and jury are to construe the words, and not the witness. (1 *Wendell*, 510.) Twelve men, and not one, must determine who was meant. The witness is to state the words and facts, and not his acceptation of them. (6 *Cowen*, 162) In matters of science and skill, the understanding of witnesses may be shewn, (3 *Cowen*, 231 ; 5 *East*, 463,) but an *inuendo* cannot be proved. (3 *State Trials*, 1058, 9,) The question however, is expressly decided in *Van Vechten* v. *Hopkins*, (5 *Johns. R.* 211,) where it was offered to be proved that a witness from reading a libel, applied it to the plaintiff and understood him to be the person intended ; the evidence was overruled, and the decision at *nisi prius* confirmed in bank.

The averments in the first count of the declaration were not sustained, and the judge correctly decided that the evidence was insufficient to submit the case to the jury .(1 *Chitty* 145. *Starkie on Slander*, 310, 275. *Salk.* 604. 2 *Esp. N. P.* 491. 5 *Cowen.* 513. 2 *Phil. Ev.*97.)

*Spencer*, in reply, said that the decision in *Van Vechten* v. *Hopkins* did not apply to oral slander. Where the slander is by writing, a court and jury are as competent to judge of its application as a witness, and therefore the understanding of the witness of the intent of the defendant in that case was correctly excluded ; but where the slander is by speaking and not by writing, it may be indispensable to learn how the witnesses understood the defendant ; for what to the court and jury might seem entirely inapplicable to the plaintiff, to the witnesses, from their knowledge of the parties and their peculiar circumstances, might be as plain as though the plaintiff was named.

*By the Court,* SUTHERLAND, J. The charge complained of in the declaration not having been made against the plaintiff by name, it became necessary for him to shew either by a colloquium or averments that he was the person intended, and that the defendant meant to be understood as charging him with having stolen his property.

The substantial words, that is, the words imputing the crime, were proved as laid in the first count. But the words which located the residence of the thief and designated the person intended to be charged, were not proved as laid. That part of the count is as follows : " I (the defendant) will not call names for fear of being sued for slander ; but the thief lives between here (the house of Putnam Bigelow where the words were spoken) and my house ;" and the plaintiff then avers that he was the only person who lived between Bigelow's and the defendant, and the averment is sustained by the evidence. But the words proved in relation to the residence of the thief are not that he lived between Bigelow's and the defendant, but that he *lived east of the defendant, and within two miles.* These are not only different words from those charged, but it is shown that several persons besides the plaintiff lived within two miles east of the defendant, and of course that they might as well have been intended as the plaintiff.

, But the plaintiff further avers the defendant, by means of the said words, insinuated and meant to be understood as charging him, the plaintiff, with being a thief and with having stolen his, the said defendant's, hams, beef and flour, &c. and that the defendant was so understood by the persons in whose hearing the words were spoken. Whether such was the intention of the defendant was a question of fact to be determined by the jury upon the evidence presented to them upon the trial. (*Van Vechten* v. *Hopkins,* 5 *Johns. R.* 211.) Averments are the subject of proof, though inuendoes are not. (*idem.* and *Starkie's Slander,* 304, *ch.* 20, and cases there cited.)

I think there was evidence, enough to go to the jury in support of the averment that the plaintiff was the person whom the defendant intended to charge, independently of

NEW-YORK,
May, 1830.

Gibson
v.
Williams.

the testimony of Bigelow and Foley, which was excluded by the judge. That the defendant intended to charge the crime upon some particular individual there can be no question. It was not a general allegation that his property had been stolen. But he declared that his wife saw the thief and would declare upon oath who she thought he was. That he lived *in the neighborhood and east of defendant's house and within two miles.* The property was also alleged to have been stolen *on the 3d and 16th of April;* and the defendant told Andrew M. Foley that he had sent word to the plaintiff, by his son Ira Gibson, that if he did not stop driving his cattle that way he would put him in mind of the *3d and 16th of April.* And Ira Gibson testified that such a message was sent by the defendant to his father by the witness. That the witness asked the defendant to explain what he meant by the *3d and 16th of April;* but he did not explain. The testimony of Mrs. Foley upon this point is also entitled to some weight.

If the jury upon this evidence had found a verdict for the plaintiff, I think we should not have set it aside and granted a new trial. A defendant who will couch his slanders in ambiguous terms, in the hope of blasting the reputation of his neighbour, without incurring any legal responsibility, cannot claim an indulgent construction of his words either from the court or the jury. The evidence, I think would justify the conclusion that the plaintiff was the person alluded to. The judge erred therefore in nonsuiting the plaintiff.

The testimony of Bigelow and Foley as to whom they understood the defendant to mean by the infamous thief, &c. was properly excluded. Mr. Starkie, in his Treatise on Evidence. (2d vol. 861,) seems to consider this species of evidence as admissible. He says the colloquium and other averments, which connect the words or libel with the plaintiff or subject, must next be proved. This is usually done, he remarks, by the testimony of one or more witnesses, *who know the parties and the circumstances, and who state their opinion and judgment as to the intention of the defendant to apply his words or libel to the party or circumstances as alleged.* It seems to be sufficient, he continues, if the witness in the first

instance *state his general belief and opinion as to the defendant's meaning*, without disclosing his reasons, leaving it to the defendant, if he think proper, to enquire as to the grounds and reasons which support that conclusion. Mr. Starkie cites no case as authority in support of these positions, and it is believed that none can be found; nor is the doctrine asserted, as far as I have been able to discover, by any other writer upon the law of libel or the rules of evidence. It is an elementary principle in the law of evidence that the understanding and opinions of witnesses are not to be received except in matters of science, and a few other special cases, resting upon peculiar circumstances. (*McKee* v. *Nelson*, 4 Cowen, 355. *Murray* v. *Bethune*, 1 *W*endell, 196.) It is the business of witnesses to state facts, and it is the province of the jury, under the direction of the court, to draw such inferences or conclusions from those facts as in their judgment they will warrant.

In *Van Vechten* v. *Hopkins*, (5 Johns. R. 211,) the plaintiff offered a witness to prove that from reading the libel he applied it to the plaintiff, and understood him to be the person intended. This evidence was overruled by Judge Spencer, who tried the cause, on the ground that it was the province of the court to determine, from a perusal of the libel, whether it was intended to apply to the plaintiff or not. Upon a motion for a new trial, it was held that whether the libel was *published of and concerning the plaintiff* was a *question of fact* which belonged to the jury and not to the court to decide. But it was also held that the evidence was properly excluded, and the court remark, that the *intention* of the defendant is not the subject of proof in the way here attempted. It is the mere opinion of the witness, which cannot and ought not to have any influence upon the verdict; and the judge who delivered the opinion of the court observed, that this kind of evidence had, he believed, frequently though he thought erroneously been admitted at nisi pirus. It is true that in that case there was no express averment that the plaintiff was the person to whom the defendant intended to apply the charge; but it is obvious that if there had been, it would not have altered or affected the views of the court to which I

have adverted. If there had been such an averment, then the plaintiff might have introduced evidence in its support ; for an averment may be proved, an inuendo cannot. But an averment must he proved by competent evidence, and not by the opinions or understanding of witnesses.

<div align="center">Nonsuit set aside and new trial granted.</div>