By the Court,

Bronson, J.
There was a time when courts thought it a duty to understand words charged to be slanderous in the most mild and inoffensive sense—when they adopted unnatural and strained constructions of the language, for the purpose of proving that it did not necessarily, and with absolute certainty impute a crime. But that day has long since gone by, and the rule of common sense has become the rule of law on this subject. Judges and jurors now read the words in court, as they would read them elsewhere; they no longer resort to those constructions which make that language innocent in the halls of justice, which was full of calumny when spoken or published out of door. Words charged to be slanderous, are to be understood in their plain and popular sense; and the question is whether, when fairly construed, they appear to have been meant, and were calculated to convey the imputation of an offence, to those who heard or read them (10 Mod. 196; 2 T. R. 206; 9 East, 96).
It is impossible, I think, to read this publication without coming to the conclusion that the defendant intended to charge the plaintiff with corrupt misconduct in his office. This is the most natural and obvious meaning of the language, and it must have been so understood by every intelligent man who read the article. It charges that the plaintiff “ put his official signature, as first judge of the county of Oswego, to a statement in writing in the form of an affidavit, and stated under his hand that the person who signed it was duly sworn, when in truth the said person was not sworn at all.” Had the article stopped here, it might have been regarded as the mere assertion of a fact, without necessarily imputing the crime of malversation in office. The omission to administer the proper oath to the person who had subscribed the affidavit might have happened through mistake or inadvertence; and the words would not have been libelous, unless the defendant intended [429] they should be understood in a criminal sense. In what sense they were published, and how they were understood, would then have been questions of fact for the jury (12 Johns. R. 239; 5 id. 211; 4 Wendell, 320.)
But the article proceeds to impute a sinister motive to the plaintiff. It charges that “ the said paper, purporting to be an affidavit, was intended and used for the purpose of preventing the re-appointment of the present collector of the custom for the port of Oswego, and that the said Joel Turrill did about that time make himself secretly, as he supposed, busy in concerting measures to produce that result.” But this is not all. The accusers proceed, we leave the public to judge, under the circumstances, whether Judge Turrill has not committed a gross violation of his oath of office, for the purpose of ruining a man whom he has long endeavored to injure.” Nothing can be more clear than that the defendant intended to charge the plaintiff with certifying to a false fact from a bad motive. It must have been so understood by every person who read the publication. It would be an insult to the good sense of those who composed the paper, as well as the public, to whom it was addressed to say that nothing was intended beyond charging the plaintiff with having made a mistake in the discharge of his official duty. Why allege that the *243 plaintiff had made himself" secretly busy in concerting measures to produce a removal”—why submit it to the public to judge whether the plaintiff had not “ committed a gross violation of his oath of office,” and that to “ for the purpose of ruining a man whom he had long endeavored to injure,” if they only intended “ the public” should understand that the plaintiff had omitted to administer the proper oath to the witness?
A charge that the plaintiff, through mere inadvertence or mistake, had omitted to swear the witness, would not be actionable, unless it were laid that the words were spoken or published ironically, and with intent to impute a crime (The Queen v. Dr. Brown, Holt, 425). And ivhenever the words are apparently innocent in their meaning, they can only be made actionable, if at all, by a distinct averment that they were published [430] and intended to be understood in a criminal sense (Andrews v. Woodmansee 15 Wendell, 232). Averments of this kind must be proved on the trial, and like all other questions of fact, must be passed upon by the jury. The rule is substantially the same where the words are of doubtful or equivocal import, and maybe understood either in a criminal or an innocent sense. The jury must say in what sense they were used. But in this case, the defendant did not charge that the plaintiff had omitted to swear the witness through mere mistake; nor did he stop at the naked fact that the witness was not sworn. He intended to leave no room for an innocent interpretation of the plaintiff’s conduct. He proceeds to suggest a motive for the action, which necessarily implies that it was done designedly; and then appeals to the public to say whether, “under the circumstances,” the plaintiff “ has not committed a gross violation of his oath of office,” and whether he has not done so “ for the purpose of ruining a man whom he has long endeavored to injure.” The words were plainly libelous in the sense of imputing to the plaintiff corrupt conduct in his office, and the judge should have so instructed the jury. There was no ground for leaving the question to them as one of mere mistake or inadvertence. That the omission of the plaintiff to swear the witness happened through inattention or mistake, there can be little room for doubt upon the evidence; but that was not the charge which the defendant undertook to justify. He invited the plaintiff into court to vindicate his character; but when he got there the ground was changed. He did not ask the jury to say that the plaintiff had intentionally disregarded his duty, or committed a gross violation of his oath of office ; but he asked them to find that the plaintiff had made a mistake. The charge was clearly erroneous, and the verdict must be set aside.
New trial granted.