# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, SEPTEMBER TERM 1834
## AT WORCESTER.

PRESENT.

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

---

## James G. Carter *versus* Ferdinand Andrews.

To utter words imputing a crime is actionable, although the crime could not be committed by the party charged with it, unless this fact be known or disclosed to the hearer ; as, to charge a tenant in common of a chattel with stealing it, there being no explanation that he was a tenant in common:

At a public sale by auction of the books of the Lancaster Reading Room, the defendant spoke the following words: " We offer these books under a disadvantage, for the *library has been plundered* by C., (the plaintiff.) It was *held*, that these words were not actionable, there being no averment or colloquium in the declaration showing that they were used to denote a felonious taking ; and though the word *plunder*, in its ordinary meaning, imports a wrongful acquisition of property, yet it does not express the precise nature of the wrong done.

THIS was an action of slander. The declaration contained three counts. The first count set forth, that the defendant, contriving and intending to expose the plaintiff to the penalties prescribed by law for the crimes of plundering, robbing, and stealing, did speak and publish the following words of and concerning him, to wit : " We " (meaning the defendant and others who had the superintendence of the sale by auction of

Carter
*v.*
Andrews.

a certain lot of books) " offer these books under a disadvantage ; for the library " (meaning the library belonging to the subscribers of the Lancaster Reading Room) " has been plundered " (meaning that it had been robbed) " by Deacon James G. Carter, of this town." In the second count, the same words are set forth as having been spoken by the defendant; but after the word " plundered," is inserted this *innuendo*, to wit : " (meaning, that books had been feloniously stolen from said library)." The third count set forth the words as follows : " The library has been plundered " (meaning, that it had been feloniously robbed) " by Deacon James G. Carter, of this town."

At the trial, before *Morton* J., it appeared, that the plaintiff was, at the time when the words were spoken, one of the proprietors of the library of the Lancaster Reading Room, an unincorporated association ; and that by verbal regulations made by the proprietors, which were well understood by them, the books were to be kept in a particular place, and were not to be removed therefrom by any proprietor, unless in conformity with such regulations.

The plaintiff offered to prove, that these words were spoken at a public auction, at which persons not proprietors were present ; and that no explanation of the words was made by the defendant, at the time when they were spoken.

The plaintiff was to be nonsuited, or a new trial was to be granted, as the Court should direct.

Oct. 3d,
1833.

*Merrick* and *Smith*, for the plaintiff. The words spoken by the defendant are to be construed according to their common popular meaning. Applying this rule, the words, unexplained at the time when spoken, imputed to the plaintiff the crime, if not of robbery, at least of theft ; and no *innuendo* was necessary. The doctrine, that words spoken are to be taken *in mitiori sensu*, is now exploded. Suppose a person is charged with stealing at a particular time in this Commonwealth, when he was in fact in England, such charge would nevertheless be actionable. So in the present case, the words, not being explained, were actionable in themselves, although the plaintiff, as one of the proprietors of the books, could not perhaps be guilty of felony in taking them    *Van*

*Ankin* v. *Westfall*, 14 Johns. R. 233 ; *Harmon* v. *Carrington*, 8 Wendell, 488 ; *Smith* v. *Williams*, Comberb. 247 ; *Walton* v. *Singleton*, 7 Serg. & R. 449 ; *Eckart* v. *Wilson*, 10 Serg. & R. 44, and cases cited ; Starkie on Slander, 68 ; *Walker* v. *Winn*, 8 Mass. R. 248. Webster's Dict. *Plunder*.

*Hoar*, *Washburn*, and *Huntington*, for the defendant, cited *Bloss* v. *Tobey*, 2 Pick. 328 ; *Chaddock* v. *Briggs*, 13 Mass. R. 248 ; *Miller* v. *Parish*, 8 Pick. 384 ; Starkie on Slander, 73 ; Russell on Crimes, 1130 ; *Phillips* v. *Barber*, 7 Wendell, 439 ; *Stanhope* v. *Blith*, 4 Coke, 15 ; *Holt* v. *Scholefield*, 6 T. R. 691 ; Holt on Libels, 176 ; 3 Inst. 167 ; 1 Rolle's Abr. 70 ; *James* v. *Rutlech*, 4 Coke, 17.

SHAW C. J. delivered the opinion of the Court. The great question in this case is, whether there is any thing in this record which charges the plaintiff with a felony in taking the books of the proprietors of the Lancaster Reading Room. That is the *gravamen* of the charge in all the three counts contained in this declaration. The declaration assumes that the effect of this language was to charge him with the crimes of plundering, robbing, and stealing. In the third count, the *innuendo*, applied to the terms, " the *library has been plundered*," is this, that it had been feloniously robbed by the plaintiff.

It was contended on the part of the defendant, that these were not actionable, because the proprietors of the Reading Room were a private, voluntary association, of whom the plaintiff was one, that they were tenants in common of the books, and that taking books by one tenant in common, though it may be contrary to the rules and by-laws agreed on by the proprietors, and a violation of duty, is still not felony.

Had the words charged as defamatory alluded to this circumstance, so that every hearer would have had the explanation along with the charge, there would have been much force in the argument. As if one were to say that A. B. has robbed my orchard, and stolen my apples from my trees, it would amount to a charge of trespass and not of felony. So, here, if the defendant had said the library has been plundered by the plaintiff, one of the proprietors, it would have presented a strong case, for consideration under this rule.

But it can be no answer to such an action, that the charge could not be true. Suppose it be said of one, that he has murdered his father, would it be any answer to an action for this slander that the father was still living ? or of a man who was never married, that he had murdered his wife, though the crime could not have been committed ? Here there 's nothing to show, that when the words were spoken, there was any thing said, stating or inferring that the plaintiff was a proprietor, so as to enable hearers, presuming that they understood the law upon this subject, to know that it was not a felony, because he was so a tenant in common of the books.

But supposing the words proved as laid, the question now presents itself in the same manner as upon a motion in arrest of judgment, or general demurrer, namely, whether the words, as set forth in either count, are actionable.

The words charged, in all the counts, stripped of the *innuendoes*, are these. " We offer you these books under a disadvantage, for the library has been plundered by Deacon James G. Carter of this town." There are no preliminary averments of distinct substantive facts, and no *colloquia*, that is, no affirmation that the words were spoken of and concerning such distinct and independent facts, in order to show that the words were used in a particular sense, which would render them actionable. It is true, that the *innuendoes*, in each count, do impute such sense to them. In the first count, after intimating by other *innuendoes*, that the defendant was acting as an auctioneer, and offered certain books for sale belonging to the library of the subscribers to the Lancaster Reading Room, and that they were offered under a disadvantage, because the library had been plundered, adds, by way of *innuendo*, that it had been " *robbed*," by the plaintiff. The second, after coming to the same word " plundered," adds, meaning that books had been feloniously stolen from said library by the plaintiff. The third has the *innuendo* hus, " meaning that it," (the library,) " had been feloniously robbed," by the plaintiff.

If the words did in fact mean what it is thus intimated by way of *innuendo*, that they did mean, they would be abundantly sufficient to support the action. But after the numer-

ous discussions and decisions upon that subject, it is in vain now to contend, that it is a good mode of declaring, to lay that such words are used with such a meaning and leave it as an open question to the jury to determine upon the facts and circumstances, whether the language was used with such a meaning or not. The case of *Bloss* v. *Tobey,* 2 Pick. 320, states the principle and the grounds on which it rests, so fully, that it cannot be necessary to repeat it. The rule is founded upon that important general principle, that a plaintiff, to entitle himself to a judgment, must lay his case in such a mode as to enable the Court to see, after verdict, that he has a good cause of action.

The law proceeds upon the hypothesis, that what is the ordinary meaning and nature and intrinsic force of language, s a question of law. When therefore words are set forth as having been spoken by the defendant, of the plaintiff, the first question is, whether they impute a charge of felony or any other infamous crime punishable by law. If they do, an *innuendo* undertaking to state the same in other words, is useless and superfluous ; if they do not, such an *innuendo* cannot aid it. It therefore often happens, that where *innuendoes* are added, which do alter and vary, and even inflame and exaggerate the sense of the words much beyond their natural force and meaning, yet such *innuendoes* are held not to vitiate the declaration. The reason of which I take to be this ; the words themselves imputing an infamous offence, the *innuendo* may be rejected as surplusage, and as the plaintiff is not allowed to go into evidence *aliunde,* to show that the words were in fact used in the sense imputed by the *innuendo,* they can have no influence whatever. But if the words do not impute such infamous crime, by their natural sense and meaning, then, as a general rule, the plaintiff is not entitled to recover, and as he cannot enlarge that meaning by an *innuendo,* so as to let in proof of extraneous facts, his action must fail.

But then it is said, and the rule is a sound one, that the law will not shut its eyes to what all the rest of the world can see ; and let the slanderer disguise his language, and wrap up his meaning in ambiguous givings out, as he will, it shall not

avail him, because courts will understand language, in whatever form it is used, as all mankind understand it. This is a correct rule and must be regarded as a most sound and salutary one, to be acted upon by the court and to be fully explained and enforced upon the trial of the facts before a jury. So language may be used ambiguously, or ironically, or technically, or conventionally. What are called cant terms and flash language, are of the latter sort, where, among a particular class of persons, by usage or convention, words are used in a particular sense. But wherever this is the fact, it is in consequence of the existence of some usage or agreement, of some report in circulation, of the time, place, or manner, in which the conversation was held ; in short, of some fact, capable of being averred in a traversable form, so that it may be put in issue and proved or disproved. If the words have the slanderous meaning alleged, not by their own intrinsic force, but by reason of the existence of some extraneous fact, the plaintiff must undertake to prove that fact, and the defendant must be at liberty to disprove it. The fact then must be averred in a traversable form, with a proper *colloquium*, to wit, an averment, that the words in question are spoken of and concerning such usage, or report, or fact, whatever it is, which gives to words, otherwise indifferent, the particular defamatory meaning imputed to them. Then the word, " meaning," or " *innuendo*," is used with great propriety and effect, in connecting the matters thus introduced by averments and *colloquia*, with the particular words laid, showing their identity, and drawing what is now the legal inference from the whole declaration, including the averments and *colloquia*, that such was, under the circumstances *thus set out*, the meaning of the words used. These rules are necessary to bring the case of slander within the well known rules of pleading, which require that a declaration shall contain enough to give notice to the defendant, of all the material facts intended to be proved, and to enable the court to perceive *from the record*, that a good title is set out by the plaintiff, to enable him to have a judgment.

In illustrating the rule, that courts will understand language as the rest of the world understand it, it may be proper to add

that when particular expressions do assume a defamatory and slanderous character, that is, when spoken ironically or otherwise, they do impute a crime, in consequence of their connexion with other words used at the same time, and if all the words thus taken together, do impute such crime, the court will so understand it, and will, as a conclusion of law, hold them to be actionable in themselves, without averments or innuendoes, although none of the words separately used are descriptive of such crime, either in a legal or popular definition. But to enable the court to come to this conclusion, all the language which was used at the time, and from which such conclusion results, must be set out, and if traversed, must be proved. *Woolnoth* v. *Meadows*, 5 East, 463 ; *Roberts* v. *Camden*, 9 East, 93. It is not my intention to cite authorities, to support these general propositions, except two or three recent cases, in which the subject has been much considered, and which have been decided since the case of *Bloss* v. *Tobey*, 2 Pick. 320.

The case of *Alexander* v. *Angle*, in the Exchequer Chamber, in 1830, 1 Crompt. & Jervis, 143, — *S. C.* 7 Bing. 119, is quite in point. It is there laid down by the court, (*Tindall*, C. J.) as a clear rule of law upon all the authorities, that an *innuendo* cannot introduce a meaning broader than that which the words naturally bear, unless connected with proper introductory averments.

*Goldstein* v. *Foss*, 2 Younge & Jervis, 146. An *innuendo* unconnected with prefatory averments cannot enlarge the sense of a libel. It was a suit against the defendant, as the secretary of a voluntary association, called The Society for the Protection of Trade against Sharpers and Swindlers, and the alleged slander consisted in an official return and report made by the defendant, as such secretary, in which he repeated the name of the plaintiff, as an improper and unfit person to be proposed and balloted for, as a member of such society. The declaration charged that the defendant thus returned the name of the plaintiff, as an unfit person to be proposed as a member of that society, *meaning* that he was a sharper and swindler. There was no averment, that by the usage and practice of the society, or any rule or by-law, it was understood, that when it was

reported that a person was unfit to be balloted for as a member, he was intended to be branded as a sharper and swindler.

After verdict the judgment was arrested, and this decision was affirmed in the Exchequer Chamber.

The opinion of the court was delivered by *Best* C. J. It proceeded upon the general ground, that the words published, to wit, that the plaintiff was an unfit person to be chosen as a member of the society, did not necessarily and by the natural force of the language, impute any thing criminal, but might proceed from age, inexperience, or various other causes quite consistent with perfect innocence. But the plaintiff had added an *innuendo* to this effect, " meaning that the plaintiff was a swindler and a sharper." Now upon the general rule, this *innuendo* was inadmissible, because, as in *Barham's case*, it alleged a meaning which was beyond the natural import of the language, and to sustain which no previous averment had been made, that in such reports, by usage or otherwise, it was understood by the society, that a return should be so considered.

The concluding part of this judgment by *Best* C. J. explains the grounds of this rule, places it upon an intelligible footing, and assigns the reason of right and policy upon which it rests.

The particular ground of our decision is, he says, that we cannot *see upon this record* that the plaintiff is charged as a swindler or sharper. A great deal has been said as to what is to be presumed after verdict, and it has been urged, that the finding of the jury will cure any defect in the declaration. Were we to decide upon that ground, in favor of the plaintiff, it appears to me, that we should deprive the subjects of this country of the privilege which they have, of appealing to the court in arrest of judgment, after the jury have found their verdict. This right is considered a valuable one.

Such being the general rules applicable to this subject, it is manifest, in applying them to the present case, that the *innuendoes* can afford no aid, in giving a construction to the defendant's language, and there is no averment or *colloquium* to show that it was used in reference to any particular subject, which would alter or vary its natural meaning, and we are to presume that all the words are stated, which were used at the

The most common meaning of this term, to plunder, is to take property from persons or places, by open force, and this may be in a course of lawful war, or by unlawful hostility, as in the case of pirates or banditti. But in another and very common meaning, though perhaps in some degree figurative, according to the general tendency of men to exaggerate and apply stronger language than the case will warrant, it is used to express the idea of taking property from a person or place, without just right, but not expressing the nature or quality of the wrong done. Like many such terms, as pillaging, rifling, pilfering, embezzling, swindling, peculation, and many other like ambiguous terms, which have not acquired, either in law or philology, a precise or definite meaning, they express the idea of wrongful acquisition, but not the nature of the wrong done.

It is to be remarked, that the allegation charged to be defamatory was, not that the books had been plundered, but that the library had been plundered, which carries a meaning somewhat different. The term " *library* " may mean, either the room or place where books are kept, or the books in the aggregate. In either case, we think, saying that the library has been plundered, is not equivalent to saying that books have been stolen from it. It may as well imply that books have been withdrawn from it, irregularly, clandestinely, and contrary to the rules and by-laws of the associates. When it is further considered, that there is no averment or *colloquium* showing upon what occasion or for what purpose the books were offered, whether for sale or otherwise, or to show what books, what library, what disadvantage they were offered under, we find it quite impossible to discover in the use of the words stated a charge of felony upon the plaintiff. Under these circumstances and pursuant to the agreement of the parties, there must be an entry,

*Plaintiff nonsuit.*