## ANDREWS *vs.* WOODMANSEE.

*Slander* will not lie against a person called on for the payment of a note, alleged to have been signed by him as a *surety*, for the speaking of words denying his signature, and that he ever gave authority to another to affix his name to the note.

An *innuendo*, that by the speaking of such words the defendant meant to impute the crime of *forgery* to the maker, will not help the case.

*It seems*, however, that where words have a covert meaning, being spoken in ironical, oblique or ambiguous terms, that a declaration in such case containing an averment that the words were spoken *with the intent to charge a crime*, would be good.

DEMURRER to declaration. This is an action of *slander* for words spoken. The declaration contains seven counts. The plaintiff, after stating as introductory matter that the defendant signed a promissory note for $70 as *surety* for him to one Daniel Fancher, which was delivered to Fancher, and that the defendant intended to cause it to be suspected and believed by the neighbors of the plaintiff and other good and worthy citizens that the plaintiff was guilty of *forgery* or accessory thereto, charged in the first count that the defendant in speaking of the note said, "I never signed the note that was going to Fancher, or saw the note in God's world," *meaning*

*thereby* that the note was a forgery and that the plaintiff was guilty of the same. The words in the *second* count are "I never signed a note with Thomas Andrews that was going to Fancher in God's world." *Third* count, "I would give five dollars if I could write as well as that," meaning the signature of his name to the note. *Fourth* count, "I never signed that note that Fancher has got, in the world, and I would give five dollars if I could write as well as my name is wrote on that note." *Fifth* count states a discourse with Fancher concerning the note, and alleges the words spoken to be thus: "You (meaning Fancher) have not got a note with my hand writing to it; I never signed a note with Andrews." *Sixth* count states the words as follows: "I never put my name to that note, nor gave him (meaning the plaintiff) liberty to do it in God's world." The *Seventh* count charges the words to be, "he (meaning the plaintiff) forged the note." The words in each count were followed by an *innuendo* that the defendant meant to impute to plaintiff the crime of forgery, either as principal or accessory. To the last count the defendant pleaded *non cul.*, and put in a general demurrer to the six first counts. The plaintiff joined in demurrer.

*I. L. Wendell*, for the defendant, insisted that the words set forth in the six first counts were not on their face slanderous, or capable of being rendered so by the most forced construction. He admitted that words spoken ironically, obliquely or in ambiguous terms, may be rendered actionable by an averment that they were spoken *with the intent to charge a crime*, but contended that without such averment they are not actionable unless slanderous *per se*. That such is the proper mode of declaring in such cases, he cited *The Queen* v. *Dr. Browne, Sir John Holt's R.* 425, *Woolnoth* v. *Meadows,* 5 *East,* 463, *Gibson* v. *Williams,* 4 *Wendell,* 320, and *Rex* v. *Horne,* 2 *Cowp.* 683. Here is no such averment. The intent, charged in the introductory part of the declaration, being mere matter of inducement which the plaintiff is not bound to prove, does not supply the want of the averment.

*C. P. Kirkland*, for the plaintiff, insisted that the declaration contained all necessary averments, and that at all events the sixth count was good ; the words in it necessarily implying a charge of forgery, and authorizing the innuendo to that effect.

*By the Court*, BRONSON, J.   The words laid in the first six counts of the declaration are not in themselves actionable, and can only be made so by such averments in relation to extrinsic matters, and the application of the words, as will show that the defendant imputed to the plaintiff a criminal offence. In such cases, the usual mode of declaring is to aver in the first place the existence of those extrinsic facts by reference to which the words become actionable ; then, that the words spoken related to those facts, which part of the count is usually termed a *colloquium;* and lastly, by proper *innuendoes,* to point the application of the words to the previous averments in the count.   In short, the plaintiff must so state his complaint, that it will appear from the declaration, supposing all the allegations to be true, that he has been charged with a crime.   Where this is done the count will be sufficient ; and whether such a charge was in fact made, will then be a question of evidence on the trial, to be decided by the jury.

The plaintiff in this case, after the usual introductory statement that he is a man of good fame, and has never been guilty of the crime of forgery or of procuring any forgery to be committed, avers that he had purchased a horse of Daniel Fancher, and for the payment of the price he gave his promissory note to Fancher for the sum of seventy dollars, which note the defendant signed as his surety, in his own proper hand writing.   The first count then states a discourse by the defendant, of and concerning the plaintiff, and of and concerning the note, and whether the defendant had executed it as surety ; and that the defendant then and there spoke and published of and concerning the plaintiff, and of and concerning the note, the following words : " I (meaning, &c.) never signed the note that was given to Fancher, or saw the note in God's world." This, omitting the innuendoes, which can only explain without enlarging the meaning of the words, is the substance of the first count. Taking the words in connection

with the preceding averment, it is evident that the defendant uttered a falsehood, but he did not impute to the plaintiff the crime of forgery. It may be true that he never signed or saw the note, and yet that the plaintiff neither forged it himself or procured it to be done. Indeed it may be that the defendant's name was subscribed to the note by his express authority. Whether the words can be rendered actionable by further averments or a different mode of framing the count, need not now be considered. It is sufficient for the present that the count does not show that the plaintiff has been charged with a criminal offence.

In the case of *The Queen* v. *Dr. Browne, Sir John Holt's R.* 425, the alleged libel was apparently harmless, but the information laid the matter to have been published ironically. In *Woolnoth* v. *Meadows*, 5 *East*, 463, the words were of doubtful import, and the declaration, after the usual introductory matter and setting forth the words, contained an express averment that they were uttered and published by the defendant with intent and meaning to convey, and that the same were understood and believed to convey a charge of the particular crime mentioned in the declaration. *Lord Ellenborough*, C. J., thought this averment would relieve the case from any doubt arising from the equivocal import of the words. In *Gibson* v. *Williams*, 4 *Wendell*, 320, the difficulty was in showing the application of the words to the plaintiff, and the declaration, after stating the words, averred the existence of particular facts to show that the words used must have been spoken of the plaintiff. There was also a further averment that the defendant by speaking the words insinuated and meant to be understood as charging the plaintiff with being a thief and having stolen hams, and that the words were so understood by those who heard them. The court noticed this averment, and remarked that whether such was the intention of the defendant was a question of fact to be determined by the jury, upon the evidence presented to them on the trial.

The second, third, fourth and fifth counts are as objectionable as the first. The *innuendo* which follows the words in each of these counts will not help the case. The office of an *innuendo* is to point the application, not to enlarge the sense of

NEW-YORK, the words. It is not the subject of proof, and only adds such
May, 1836. explanatory matter in relation to the words uttered as must
Andrews  have been understood by the hearers at the time.

v.  But it is said that the sixth count can be sustained. It
Woodmansee. states that the defendant, in a discourse with Fancher and
others, spoke and published of and concerning the plaintiff,
and of and concerning the note, and whether the defendant
had signed his name thereto in his own proper hand writing,
and whether the defendant had given the plaintiff liberty to
sign his name to the note, and whether the signature purport-
ing to be in the hand writing of the defendant was a forgery,
these words: "I never put my name to that note, nor gave
him (meaning the plaintiff) liberty to do it in God's world;"
(meaning thereby that the plaintiff had been guilty of forgery,
and feloniously signed the defendant's name to the note with-
out his consent.) This conclusion does not follow from the
words. Supposing them true, the defendant may still have
authorized some third person to subscribe his name to the
note, or if it be a forgery, the plaintiff may have passed it to
Fancher without any knowledge of that fact. If the words
can be rendered actionable, it cannot be done without some
further averment, either about the occasion or manner of
speaking them, or the intent with which they were uttered.

Judgment for the defendant.