## MOORE v. DAVIS. (No. 3189.)

Court of Civil Appeals of Texas. Amarillo. March 20, 1929.

Rehearing Denied April 24, 1929.

McDonald & Anderson and B. Y. Cummings, all of Wichita Falls, for appellant.

John Speer, of Denton, and R. E. Taylor, of Wichita Falls, for appellee.

HALL, C. J. The appellant, plaintiff below, filed two suits in the district court of Cooke county against W. O. Davis, appellee, on the 6th day of July, 1927. In both cases appellant sought to recover damages for alleged libelous statements published in the

newspapes. Upon motion, the court consolidated the cases, and they were tried together. The case was submitted to a jury upon a general charge. There was a verdict and judgment for the defendant, from which the plaintiff, Moore, has appealed.

The court did not order the parties to replead. This should have been done. Wright v. Chandler (Tex. Civ. App.) 173 S. W. 1173; Peck v. Powell (Tex. Civ. App.) 259 S. W. 640. Since both actions are based upon the same alleged libelous publication, the failure of the trial judge to require plaintiff to replead after consolidation tends in no way to confuse the issues presented here.

The matter alleged to have been published in the newspapers of Denton and Cooke counties is as follows:

"W. S. Moore seems to think that he ought to be elected by the people because the lawyers are opposed to him. The lawyers are Moore's nearest neighbors and know more about him than any one else. When did a man have the impudence to claim that he was entitled to an office because his neighbors did not have a good opinion of him? We should mistrust the man who claims to have bad neighbors; the fault is generally with himself. It is no recommendation to a lawyer that other members of the bar have a poor opinion of him. They are familiar with his method; they have been consulted by people who have had dealings with him and who complain that they have been defrauded. Mr. Moore could have urged as another qualification for district judgeship that the Odd Fellows are against him. He was formerly a member of the lodge and they know what he attempted to do with their property."

"I note that R. R. Bell, our former county attorney, and now a resident of Oklahoma City, has rushed into print advocating the election of W. S. Moore. The people remember how R. R. Bell prospered as county attorney. W. S. Moore learned under him. Nothing more need be said."

Plaintiff alleges that such article was published on July 10 and 16, 1926, and was signed by the defendant Davis; that by such language the defendant meant, and intended to mean, that the plaintiff, as a practicing lawyer, had defrauded his clients in his capacity as an attorney, and had been'guilty of fraudulent, dishonorable, and criminal conduct in his relations with his clients as their attorney; that plaintiff had been guilty of fraudulent, dishonest, and dishonorable conduct in connection with the property belonging to the Odd Fellows lodge; that, while one R. R. Bell was county attorney of Cooke county, he had been guilty of fraudulent and corrupt conduct, had prospered thereby, and that plaintiff had learned, by reason of his association with Bell, to practice dishonorably and resort to corrupt methods in obtaining money. Plaintiff alleges that he had a good name, character, and reputation among the people of the judicial district; that he was then the judge of the judicial district, composed of the two counties in which the libelous matter was published; that the people had confidence in his honesty and integrity, and that said article was published with the malicious intent to injure plaintiff, and that plaintiff had been injured and damaged in his good name and reputation, and had been humiliated and subjected to mental agony and distress; that many good and worthy citizens of the judicial district had believed the statements in said article, and that its publication exposed plaintiff to public hatred, contempt, ridicule, and financial injury, and tended to impeach his honesty and integrity; that, by reason of the wrongful and malicious acts complained of, plaintiff had sustained actual damages in the sum of $10,000, and exemplary damages in the sum of $15,000.

The defendant, Davis, answered by general demurrer, numerous special exceptions, general denial, and specially alleged, in substance, that in March, 1926, plaintiff had been appointed by Governor Ferguson to fill the vacancy in the judgeship for the Sixteenth judicial district, resulting from the death of Judge C. R. Pearman; that the defendant, as well as nearly every other practicing attorney in the district, believing the plaintiff to be unfit for that trust, protested against his appointment; that this protest angered the plaintiff, and in his speeches during the campaign for re-election, and in his published communications, he denounced the attorneys in the district, and especially those residing in Gainesville, as shysters, tricksters, and dishonest practitioners, who were opposing him because he would make them quit their dishonorable practice and conduct themselves properly. At the first term of the court which plaintiff held in Gainesville, he delivered a lecture from the bench, and in the hearing of many bystanders and the attorneys practicing before him, and openly charged that their practice and conduct had been criminal, and that his predecessors on the bench had permitted them to run the court and secure whatever decisions they desired, which practice he intended to stop. The plaintiff thus aspersed the memory of his predecessors, who were honorable and upright judges. After court adjourned, he openly stated that he delivered his lecture to show the lawyers that he was not afraid of them, and applied to the lawyers a vile epithet not fit for print. In his speeches advocating his cause before the people, especially in Denton county, he denounced the defendant as "an old liar that no one would believe."

The defendant, believing plaintiff unfit for the judgeship, and that his election would be a public misfortune, endeavored to make known to the people some of the things showing him to be unfit for the office which he was seeking; that the matters stated in the publi-

cation were literally true, as well also as any legitimate inference therefrom. The defendant then sets out nineteen specific acts and transactions in which it is charged that plaintiff has been guilty of unfair, dishonest, and fraudulent conduct in relation to numerous parties and in connection with 'numerous business deals and transactions and in violation of plaintiff's duty as an attorney and an officer of court. Defendant then alleges that there are many other similar transactions in which the plaintiff has been engaged, but that defendant believes that those enumerated are sufficient to justify any legitimate inference from the newspaper publications complained of.

The statement of facts contains 497 pages, including more than fifty documents which are set out in full. The statement might have been abbreviated if rule 72 for the district and county courts had been complied with, and the appellee has specifically objected to the statement upon such ground. This violation of the rule, however, affects only the question of costs.

■ In one paragraph, the court charged the jury as follows:

"You are further instructed that if you find and believe from the evidence before you that at the time W. O. Davis wrote, uttered, published and circulated the articles complained of and as alleged in the plaintiff's petition, that he did so believing the same to be true from all the facts and circumstances offered in evidence before you, then and in that event you will find for the defendant."

The court did not number the several paragraphs of the charge, and the above-quoted paragraph is referred to as No. 7. In a prior paragraph, which is referred to by appellant as No. 4, the court instructed the jury as follows:

"You are instructed that if you find and believe from the evidence before you that the articles published as alleged by the plaintiff W. S. Moore and introduced in evidence before you, were in fact false and untrue at the time same were published and that the defendant W. O. Davis knew same to be false and untrue at the time he caused the same to be published, then you will find for the plaintiff W. S. Moore and assess his actual damages at such amount as you may find he has been actually damaged by reason of the publication and circulation of such articles, if you find that he has been damaged in any sum."

In the beginning of the charge, the court briefly stated the pleadings and issues, and paragraph 4 correctly charged the jury upon the issue of actual damages. Immediately after paragraph 4, the court states that the plaintiff, Moore, in this case is also seeking to recover exemplary damages against the defendant, Davis, and alleges that the defendant was prompted by malice, ill will, and hatred toward plaintiff at the time he had the articles published, as alleged in plaintiff's petition, and alleges that he has suffered damages by reason of such malice, ill will, and hatred, as exemplary damages, in the sum of $30,000. The court then defines the term "malice," and in the following paragraph charges the jury that, if they find that Davis published the articles, knowing or believing such statement to be false, untrue, and was at said time prompted by his malice, ill will, or hatred toward the plaintiff, and that the plaintiff has suffered damages by reason thereof, then to find for Moore and assess his damages at such a sum as the jury believed would compensate him for the damages. This is immediately followed by paragraph No. 7, and paragraph No. 7 is followed by an explanation of the purpose of awarding exemplary damages.

■ So it will be seen that the court's charge is really in two parts. The first division relates to the issue of actual damages, and the second to the issue of exemplary damages. Whether a charge is erroneous or misleading should be determined by consideration of the entire charge, pleadings, and the evidence, and in construing a charge it must be considered as a whole, and, if as a whole it states the law correctly, there is no reversible error, although a part of the instructions considered alone may be held erroneous, and, where the charge as a whole correctly expresses the law, defects in particular instructions are not grounds for reversal, where the jury were not misled. These are fundamental rules, and, when applied to this case, we think the charge is not subject to the criticisms urged. The paragraph which appellant has numbered 7 would have been improved by adding the words "upon the issue of exemplary damages," but, since that paragraph is a part of the court's charge, which relates to exemplary damages alone, we think the jury could not have been misled by the charge as given. We therefore overrule the propositions urged against the charge upon the grounds stated.

■ The next contention to be considered is that the court erred in not instructing the jury that the language used was libelous per se.

"In the absence of statutory or constitutional provision to the contrary, the general rule is that in all civil actions of libel or slander, defendant is justified in law and exempt from all civil responsibility where he alleges and establishes the truth of the matter charged as defamatory, whether the words are actionable per se or per quod and notwithstanding the publication was malicious or without reason on the part of defendant to believe the imputation to be true." 36 Cyc. 1231, § 193; Wheless v. W. Y. Davis & Son (Tex. Civ. App.) 122 S. W. 929.

R. S. art. 5431, expressly provides that, in any action for libel, the truth of the statement in such publication shall be a defense to

such action. And this relates to all libelous publications, whether libelous per se or per quod. Houston Press Co. v. Smith (Tex. Civ. App.) 3 S.W.(2d) 900.

■ The next two propositions challenge the action of the court in permitting evidence of matters and transactions which occurred subsequent to the publication of the alleged libelous matter. The charges alleged to be libelous are general in their character. Whether, under such conditions, proof of subsequent acts which would sustain the general charges is admissible has not been decided in this state, so far as we are able to find, but the rule seems to be in other jurisdictions that proof of subsequent matters which throw light upon the general charges are admissible. Claypool v. Claypool, 65 Ill. App. 446; Matthews v. Detroit Journal Co., 123 Mich. 608, 82 N. W. 243; Lawson v. Morning Journal Ass'n, 32 App. Div. 71, 52 N. Y. S. 484; State v. Bridgman, 49 Vt. 202, 24 Am. Rep. 124; State v. Way, 5 Neb. 283.

"Where the imputation is general, defendant is entitled to prove any specific acts going to establish the truth of the imputation or from which the jury might reasonably be warranted in finding the imputation to be true, as, for instance, where the words impute habitual acts of misconduct or crime on the part of plaintiff." 37 C. J. § 504, p. 86; Quaid v. Tipton, 21 Tex. Civ. App. 131, 51 S. W. 264; Ratcliffe v. Louisville Courier-Journal, 99 Ky. 416, 36 S. W. 177; Burkhiser v. Lyons (Tex. Civ. App.) 167 S. W. 246; Briggs v. Garrett, 111 Pa. 404, 2 A. 513, 56 Am. Rep. 274; Adams v. Ward, 1 Stew. (Ala.) 42.

■ Under the same and subsequent propositions, the appellant insists that the court erred in instructing the jury that a judge who brings a suit in his own behalf and in his own court is not authorized to make any orders in said suit or to control the disposition of the case, and that the plaintiff, Moore, had no right to order the clerk to erase from the minutes of the district clerk of Cooke county the orders issued by Judge McCallum, which orders had been entered upon the minutes of the clerk of said court under directions of the judge acting in said cause. The orders had been made by Judge McCallum of Dallas in an injunction proceeding instituted by plaintiff against his opponent, Judge Owsley.

The charge, as given, correctly stated the rule of law, and, while the occurrence testified to by the district clerk was subsequent to the publication of the alleged libelous matter, if admissible under the above authorities, it was competent upon the issue of the plaintiff's qualification for the office of district judge.

It is further contended that the court erred in permitting the witness Mrs. Stella Sperry to testify by depositions in effect that she was filing a suit for divorce, and went to the office of her attorney, Mr. Blanton, and found the plaintiff there; that plaintiff told her Mr. Blanton was sick, and that she told plaintiff that Blanton wanted her to swear to a paper that had a mistake in it, and she did not want to make the affidavit, because it was not all true, and that plaintiff told her it would be all right, and that she had to have some grounds to get a divorce, and to pay him $5 and he would see that she got the divorce, and "for me not to be uneasy, he would see that I got it." She stated she paid him the money to get the divorce. The petition for divorce was filed about the 30th day of July, 1926. Blanton and Moore each testified, giving his version of the transaction, and the plaintiff requested the court to charge the jury to disregard all testimony with reference to the matter. The contention is that, because this transaction, like the one with reference to the orders in the district court, occurred several weeks after the publication alleged to be libelous, it should not have been admitted. The court did not err in not instructing the jury not to consider the testimony.

■■ The appellee made specific charges in his answer with reference to plaintiff's connection with some oil leases. One charge is to the effect that plaintiff, as a district judge, which official position gave him prestige and standing, entered into a contract with one Waide and other landowners living in the vicinity to have an oil well drilled to a depth of 3,500 feet upon certain mineral leases which Waide and others gave him, representing that he would have the well spudded in by some reliable company and sunk to a depth of 3,500 feet; that his promises were fraudulently made, and, on the day before the expiration of the time when the drilling or spudding in should commence, the parties associated with plaintiff employed one Luther Myer to move a water well drilling outfit on the land, agreeing to pay Myer $50 to drill the well a few feet; that plaintiff advised that the well be spudded in with a water drilling outfit, and with his associates went to the bank where the leases were deposited, and demanded possession of them, intending to sell the leases to bona fide purchasers for whatever they could get; when the bank refused to deliver the leases, that plaintiff, in the name of his associates, Chancelor and Netterville, brought suit against the bank and others before plaintiff as district judge, claiming that they had been damaged in the sum of $80,000.

The court qualified the bill of exception with the statement that the plaintiff had testified freely and fully with reference to this matter on his direct examination before any evidence had been introduced by the defendant. A party who accepts a bill of exception which had been qualified by the court is conclusively bound by the qualification. Citizens' National Bank v. Slaton (Tex. Civ. App.) 189 S. W. 742. The court did not err in refusing the special charge requested by plaintiff.

Evidence of another well-drilling transac-

tion upon what is called the Laura Schumacher lease was introduced, in which the witness Stansberry testified that he was employed by plaintiff and another owner of the lease to spud in a well. The witness says that he took a water well rig up there, and drilled a 6-inch hole about 20 feet deep; that he only drilled one day, and then took part of the rig off of the lease, and went home, and never returned for a month or two; that he was in the business of drilling water wells; that this occurred some time in April, 1927. The plaintiff objected to this testimony, and the court qualified the bill of exception by the statement that the matters referred to were testified to fully and freely upon direct examination before any testimony was introduced by the defendant.

Other testimony was introduced with reference to transactions between the plaintiff and other parties since the publication of the alleged libelous matter. Objections were urged upon the ground that they occurred after the publication. These objections were all overruled and the evidence admitted. What has been said above disposes of these contentions.

■ The appellant also insists that the court erred in not giving his special charge upon the burden of proof. This charge was requested in connection with twenty other special charges, all incorporated in one instrument of writing. Some of the other charges were given, in effect, in the court's general charge, and most of the remainder could not have been properly given. The rule is that, when charges or issues are requested en masse, and any of them are improper or have been given in the court's general charge, the court does not err in refusing other charges or issues which are proper. Request in such cases should be made upon separate sheets of paper. The court is not required to select from a mass of charges or issues those that are correct and give them, but this duty rests upon the complaining party. Morris v. McSpadden (Tex. Civ. App.) 179 S. W. 554; McBurnett v. Smith & McCallin (Tex. Civ. App.) 286 S. W. 599; Clemmons v. McDowell (Tex. Civ. App.) 5 S.W.(2d) 224.

■ Aside from this fact, the appellant was not entitled to have the charge given. The alleged defamatory matter related to him as an officer and as a candidate. Moreover, his candidacy was a matter of public concern to every citizen, and especially those entitled to vote in his judicial district. The published matter, therefore, was qualifiedly privileged upon these grounds. R. S. art. 5431, provides that the truth of an alleged libelous statement shall be a defense to such action.

Article 5432 provides that:

"The publication of the following matters by any newspaper or periodical, shall be deemed privileged, and shall not be made the basis of any action for libel without proof of actual malice: * * * 4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

■ Under these statutes, appellant had the burden of proving that the matter was published at the instigation of appellee; that the statements therein were false; and that they were made and published with actual malice. Express Printing Co. v. Copeland, 64 Tex. 354; Tyler Commercial College v. Lattimore (Tex. Civ. App.) 12 S.W.(2d) 680; Holt v. Parsons, 23 Tex. 9, 76 Am. Dec. 49; 27 C. J. 84, § 498. Until these facts were proven, appellant had not made a prima facie case, and as to them the burden of proof never shifted to the appellee. Appellee's plea of justification is not to be taken as a plea in confession and avoidance because, under article 5432, appellant, in order to recover, must prove that the statements are false and were made with actual malice. In the trial of the case, appellant proceeded upon this theory, and testified in chief with reference to many of the specific charges made by appellee in his answer, thus assuming the burden of proof. The general rule is:

"That the burden of proof 'remains on a party affirming a fact in support of his case, and does not change in any aspect of the cause, though the weight of evidence may shift from side to side, according to the nature and strength of the proof offered in support or denial of the main fact to be established.' * * * While the party having the affirmative of an issue holds the burden of proof as a general rule, it is not necessary that the issue should always be presented in an affirmative form. * * * If this were requisite, a new change in the form of the issue would change the burden of proof, without regard to the substance and effect of the issue. Much less does the fact that a defendant is forced to maintain the affirmative of some fact in disproving the plaintiff's case shift upon him the burden of proof. * * * That a party does not shift to his adversary the burden of proof by making out a prima facie case is clear from what we have said, and is a well-settled principle. His case must be disproved; but, when proof having this tendency is produced, it then becomes a question whether, upon the whole evidence, a prima facie case has been successfully met by the adverse party. If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him. If the testimony is evenly balanced, he has failed to establish the issue, but has left it doubtful whether he has sustained it or not, and that doubt must inure to the benefit of his adversary." Clark v. Hills, 67 Tex. 141, 2 S. W. 356.

In our opinion, the burden of proof did not shift upon the issues above stated. The burden of evidence, however, or the weight of the evidence, may have rested upon the defendant to establish the truth of at least one of the

twenty specific charges set out in his answer, and this seems to have been done to the satisfaction of the jury. Under such circumstances, it would have been improper for the court to charge that the burden of proof rested upon defendant. Southwestern Telegraph & Telephone Co. v. Luckett, 60 Tex. Civ. App. 117, 127 S. W. 856; Kirby Lbr. Co. v. Stewart (Tex. Civ. App.) 141 S. W. 295; Powell v. Powell (Tex. Civ. App.) 170 S. W. 111; Producers' Oil Co. v. State (Tex. Civ. App.) 213 S. W. 349; Tarwater v. Donley County State Bank (Tex. Civ. App.) 277 S. W. 176; Blum v. Strong, 71 Tex. 321, 6 S. W. 167; Stooksbury et al. v. Swan, 85 Tex. 563, 22 S. W. 963.

The judgment is affirmed.